IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Curtis Lee, A.K.A Steven Ackridge,   :
             Petitioner      :
                            :
      v.                    :   No. 101 M.D. 2022
                            :
Christopher M. Thomas, Director of   :
Classification Movement and         :
Registration (Philadelphia Prison     :
System), and Jaime Sorber,          :
Superintendent at S.C.I. Phoenix,    :
and Kim Nixon, Records Room      :
Supervisor-Department of          :
Corrections at S.C.I. Phoenix,     :
            Respondents   :   Submitted:  December 9, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE MARY HANNAH LEAVITT, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE CEISLER                              FILED:  March 17, 2023

Petitioner Curtis Lee, A.K.A. Steven Ackridge (Lee), an inmate currently incarcerated within this Commonwealth's prison system, has filed a *pro se* petition for review (PFR) in our original jurisdiction against Respondents Christopher M. Thomas, Director of Classification Movement and Registration (Philadelphia Prison System), Jaime Sorber, Superintendent at S.C.I. Phoenix (Sorber),[1] and Kim Nixon, Records Room Supervisor-Department of Corrections at S.C.I. Phoenix (Nixon) (Respondents, collectively). Through his PFR, Lee contends that he was not given the proper amount of judicially ordered credit for time served in pre-trial

---

[1] "S.C.I." stands for "state correctional institution."

confinement, and requests what amounts to mandamus relief against Respondents in order to correct this putative error. In response, Sorber and Nixon (DOC Respondents, collectively) have jointly filed preliminary objections to the PFR, as has Thomas individually, through which they all assert that Lee is not entitled to the relief he seeks. Upon thorough review, we overrule Thomas' preliminary objections in part, sustain them in part, and dismiss Lee's claims against him, and overrule Respondents' preliminary objections in part and sustain them in part.

## I. Background

The relevant facts, as articulated by Lee in his PFR, gleaned from the documents attached thereto, and taken from the record created in his prior, related appeal involving the Pennsylvania Board of Probation and Parole (Board),[2] are as follows:[3] On December 6, 1996, Lee pled guilty in the Court of Common Pleas of Philadelphia County (Sentencing Court) to multiple burglary and robbery charges.

---

[2] The Board has been renamed the Pennsylvania Parole Board. *See* Sections 15, 16, and 16.1 of the Act of December 18, 2019, P.L. 776, No. 115 (effective February 18, 2020); *see also* Sections 6101 and 6111(a) of the Prisons and Parole Code, *as amended*, 61 Pa. C.S. §§ 6101, 6111(a).

[3] "Generally, when considering preliminary objections in the nature of a demurrer, a court may not take judicial notice of the records in another case. This general rule is subject to limited exceptions. 'It is appropriate for a court to take notice of a fact which the parties have admitted or which is incorporated into the complaint by reference to a prior court action.'" *Guarrasi v. Scott*, 25 A.3d 394, 398 n.3 (Pa. Cmwlth. 2011) (quoting *Styers v. Bedford Grange Mut. Ins. Co.*, 900 A.2d 895, 899 (Pa. Super. 2006)).

Here, Lee discusses *Lee v. Pennsylvania Board of Probation and Parole*, 251 A.3d 842 (Pa. Cmwlth. 2021) (*Lee I*), the original jurisdiction action he brought against the Board, at length in his PFR, and has even attached thereto our opinion that disposed of that case, as well as a number of the briefs and other evidentiary items that were filed in that action against the Board. *See* PFR at 9-11, Exs. 4-11. Accordingly, we may take judicial notice of the record from that prior matter.

We also note that Lee neglected to separate the vast majority of his PFR's factual averments into individually numbered paragraphs, with nearly all of them contained in what amounts to a lengthy narrative statement, so we cite to the PFR by referencing the relevant page number, or, where necessary, the relevant attached exhibit.

*Lee I*, 251 A.3d at 843-44. As a result, he was sentenced to 78 months to 180 months in state prison (Original Sentence), with a maximum date on that Original Sentence of August 1, 2016. *Id.* at 844. In 2008, the Board paroled Lee to a detainer sentence that had been lodged against him in North Carolina. *Id.* at 844 n.3.

In 2011, Lee was arrested in North Carolina on drug and theft charges, as well as technical parole violations, and was jailed in Mecklenburg County, North Carolina. *Id.* Thereafter, in 2012, Lee was inadvertently released from jail in North Carolina, instead of being handed over to the Board. *Id.* He was arrested again the following year in Mecklenberg County and, on March 8, 2013, was transferred to the Board by the Mecklenberg County Sheriff's Department. *Id.*

Thereafter, on September 16, 2014, the Board paroled Lee to a community corrections center (CCC) in Philadelphia known as the Gaudenzia First Program (Gaudenzia), at which point the maximum date on his Original Sentence was April 30, 2021. *Id.* at 844. This recalculated maximum date factored in the time that had elapsed between his transfer to North Carolina in 2008 and his return to Board custody in 2013. *Id.* at 844 n.3.

> The Board subsequently took administrative action to declare Lee delinquent, effective April 12, 2016, because he moved from his approved residence without permission and was unsuccessfully discharged from Gaudenzia ([for] technical violations). *See* [Certified Record (C.R.)] at 14-15. On June 3, 2016, the Philadelphia Police Department arrested Lee, charged him with multiple drug-related offenses (New Charges), and confined him in the Philadelphia County Prison. *Id.* at 16-21. The Board filed a detainer warrant against Lee that same day. *Id.* at 22. Lee subsequently waived his right to counsel and to a preliminary detention panel, and to a violation hearing before the Board, and he admitted to the technical violations. *See id.* at 31-34.

*Id.* at 844.

3

On July 13, 2016, the Board issued a decision, which memorialized its July 7, 2016 determination that Lee was to be recommitted on the Original Sentence to serve six months of backtime as a technical parole violator (TPV). *Id.* In addition, the Board directed that Lee was to be automatically paroled from the Original Sentence on December 3, 2016, pending resolution of the New Charges. *Id.* Finally, the Board recalculated the maximum date on the Original Sentence as June 21, 2021, in order to reflect the length of Lee's most recent delinquency. *Id.*

The Sentencing Court then repeatedly delayed Lee's sentencing, due to concerns about Lee's mental health and competency, which also led the Board to hold off on taking additional action against Lee in response to that conviction. C.R. at 63, 67.[4] During the course of this delay, Lee was detained in the forensic unit at the Philadelphia Department of Prisons' Detention Center. *Id.* at 63.

On April 5, 2018, the Board issued another decision, in which it referenced its July 2016 decision, noted Lee's conviction on the New Charges, and stated that it would take no additional action against Lee in response to that conviction. *Lee I*, 251 A.3d at 844. This decision also left the maximum date on Lee's Original Sentence unchanged, as June 21, 2021. *Id.*

> On April 18, 2018, Lee was reparoled to a CCC in Philadelphia. *See id.* at 69-74.[5]
>
> On July 20, 2018, the [Sentencing Court] sentenced Lee on his New Charges to 2 to 5 years of incarceration, followed by a maximum of 5 years of probation (New Sentence). *See* C.R. at 75, 80. The sentencing order specifically stated that "[t]his sentence shall commence on 07/20/2018[,]" [with "[c]redit for time served[,]" and

---

[4] Lee has been diagnosed as suffering from schizoaffective disorder and post-traumatic stress disorder. C.R. at 61.

[5] It is unclear why or from what the Board paroled Lee at that point, given that he had finished serving the last of his Board-imposed backtime on December 3, 2016.

4

directed that [said] "[c]redit [is] to be calculated by the Phila[delphia] Prison System[.]" *Id.* As such, following Lee's commitment to an [S.C.I.], the Department of Corrections (DOC) issued a sentence status summary (DOC Summary), calculating Lee's New Sentence to have a controlling minimum date of April 18, 2020, and a controlling maximum date of April 18, 2023. C.R. at 82-84. The DOC Summary also indicated that Lee was given credit towards his New Sentence for the time he spent incarcerated prior to sentencing on the following dates: June 2, 2016; and April 19, 2018, to July 20, 2018. *Id.* at 82.

*Lee I*, 251 A.3d at 845.

On October 25, 2018, Lee's then-counsel sent Thomas a letter, in which she asserted that Lee had not received the full amount of pre-sentence custody credit to which he was entitled, and requested that Thomas expeditiously correct this mistake. PFR, Ex. 5. Thomas responded to Lee's then-counsel via a letter of his own on November 16, 2018, writing, in relevant part:

I have investigated what you claim as an error committed regarding . . . Lee's credit . . . and [have] concluded the following:

He was awarded credit from 6/2/16 to 6/2/16 (date of arrest) and from 4/19/18 to 7/20/18 (date of sentencing). The time from 6/3/16 to 7/19/18 was applied to dockets CP-51-CR 0805241, 0811261, and 0900491-1996 which were [s]tate [b]ack [t]ime [s]entences [i]mposed and calculated by the . . . Board on 7/7/16 after his [s]tate [p]arole was revoked. Your client should have been informed of this in writing by the . . . Board as with all [p]arole [v]iolators. Since the [s]tate [p]arole [d]etainer was lodged by [the Board] on 6/4/16, the sentences should have started then, not 6/3/16, as . . . DOC calculated. He was then re-paroled on these dockets by the . . . Board on 4/18/18 and we subsequently started his credit again on 4/19/18.

[S]ince the . . . DOC calculates state sentences and [is] from where [sentence status summaries are] generated, which I do not have, I cannot ascertain whether or not his

> [New S]entence reflects the credit awarded. I recommend you obtain a copy either from your client or . . . DOC and confirm what credit was granted and follow up with me if needed.

*Id.*, Ex. 6. On December 6, 2018, Lee's then-counsel informed Lee about her communications with Thomas, told Lee that "[i]t appears that the majority of the time that you were sitting in Philadelphia County [prior to the July 20, 2018 sentencing hearing] was somehow applied to your older dockets[,]" and also asked Lee to "send [her] a copy of [his] green sheet so that [she could] see where all of [his] credit was applied." *Id.*, Ex. 5. There is nothing in the record for *Lee I* or contained in Lee's PFR from this matter indicating that there were any subsequent exchanges between Lee and his then-counsel.

On April 9, 2019, Lee filed an administrative remedies form with the Board, in which he claimed that the Board had not applied the correct amount of presentence detention credit towards his Original Sentence and had thus erroneously calculated the Original Sentence's minimum and maximum dates. *Lee I*, 251 A.3d at 845. Additionally, he asserted therein that the Board had illegally changed the length of his judicially imposed New Sentence and had violated his due process rights. *Id.*

> By letter mailed October 2, 2019, . . . counsel for the Board responded to Lee's administrative remedies form and subsequent correspondence, indicating that it would take no further action in the matter. C.R. at 141. The Board explained that its April 5, 2018 decision did not recommit Lee as a convicted parole violator for his . . . conviction on the New Charges, but merely noted the conviction and that the Board would take no action on the conviction. *Id.* Moreover, because the Board's decision took no action as to Lee's [then-]recent . . . criminal conviction, no further relief could be granted regarding that conviction. *Id.* The Board then clarified that, to the extent Lee challenged the April 18, 2020 minimum sentence release date for the new conviction, the sentencing court and DOC are responsible for calculating an inmate's initial sentence credit

determination, not the Board; therefore, the Board dismissed Lee's challenges to his initial sentence credit allocation regarding his New Sentence as unauthorized. *Id.*

Lee then filed with this Court a *pro se* petition for review (Petition) seeking to appeal from the Board's October 2019 communication . . . . In response, the Board filed an application to quash Lee's appeal for lack of jurisdiction (Application), and th[is] Court thereafter ordered that the Application be decided with the merits of the Petition.

*Lee I*, 251 A.3d at 845-46. On February 3, 2021, we granted the Application, concluding that we lacked jurisdiction to consider Lee's Petition because the Board's October 2, 2019 letter to Lee did not constitute an adjudication and, in addition, that we could not construe the Petition as a mandamus action against DOC, which was not a party to that action. *Id.* at 847-48.

Thereafter, Lee filed this action against DOC Respondents and Thomas, in which, broadly speaking, he reiterates his assertion that he has not received proper credit towards his New Sentence for the time period he was held in presentence detainment. *See generally* PFR at 8-20, 24-25. Lee also maintains that he is being illegally held by Sorber as a result of Nixon's and Thomas' alleged failure to award him such credit, which he claims has contravened the July 20, 2018 sentencing order's express terms, as well as Section 9760 of the Sentencing Code, 42 Pa. C.S. § 9760,[6] and has resulted in him serving time beyond the true maximum date on his New Sentence. PFR at 1-5, 8. Accordingly, Lee requests that we order Nixon and Thomas to recalculate Lee's New Sentence to reflect that the Sentencing Court awarded him credit for time served between June 2, 2016, and July 20, 2018; vacate

---

[6] Per Section 9760(1) of the Sentencing Code, sentencing courts are required to award convicted individuals with "[c]redit against the maximum term and any minimum term . . . for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal." 42 Pa. C.S. § 9760(1).

the New Sentence's probationary term in the interest of "justice"; and direct Sorber to release him from prison immediately. *Id.* at 8, 37-39.

Thereafter, DOC Respondents and Thomas each demurred to the PFR via the aforementioned preliminary objections. DOC Respondents challenge the PFR on two bases. First, Lee does not have a clear right to relief, because the language used in the sentencing order is vague and does not precisely identify the period for which Lee is entitled to receive credit towards his New Sentence. Second, because they do not have a duty to give him the credit he seeks, as that same credit was already applied towards his Original Sentence. DOC Respondents' Br. at 9-11. As for Thomas, he presents arguments that are substantially similar to those put forth by DOC Respondents, with an additional assertion that he has no duty to provide the sought-after relief because only DOC can do so. Thomas' Br. at 11-19.

## II. Discussion

> In considering a demurrer, [such as those articulated by Respondents,] we accept as true all well-pled material allegations in the petition, as well as all inferences reasonably deducible therefrom. *Aviles v. Dep't of Corr.*, 875 A.2d 1209 (Pa. Cmwlth. 2005). However, conclusions of law and unjustified inferences are not so admitted. *Griffin v. Dep't of Corr.*, 862 A.2d 152 (Pa. Cmwlth. 2004).

> In addition, courts reviewing preliminary objections may not only consider the facts pled in [a petition for review], but also any documents or exhibits attached to it. *Lawrence v. Dep't of Corr.*, 941 A.2d 70 (Pa. Cmwlth. 2007). It is not necessary to accept as true any averments in [a petition for review] that conflict with exhibits attached to it. *Id.* A demurrer must be sustained where it is clear and free from doubt the law will not permit recovery under the alleged facts; any doubt must be resolved by a refusal to sustain the demurrer. *Kretchmar v. Com*[.], 831 A.2d 793 (Pa. Cmwlth. 2003).

8

*Allen v. Dep't of Corr.*, 103 A.3d 365, 369 (Pa. Cmwlth. 2014). Additionally, as already discussed *supra*, a court may take judicial notice at the preliminary objections stage of materials from prior court proceedings that, like in this matter, are incorporated by reference into the petition for review. *Guarrasi*, 25 A.3d at 398 n.3. As for mandamus, it

> is an extraordinary remedy at common law, designed to compel the performance of a ministerial act or mandatory duty. *McCray v. Dep't of Corr.*, . . . 872 A.2d 1127 ([Pa.] 2005); *Detar v. Beard*, 898 A.2d 26 (Pa. Cmwlth. 2006). "The purpose of mandamus is not to establish legal rights, but to enforce those rights already established beyond peradventure." *Detar*, 898 A.2d at 29. This Court may only issue a writ of mandamus where: (1) the petitioner possesses a clear legal right to enforce the performance of a ministerial act or mandatory duty; (2) the defendant possesses a corresponding duty to perform the act; and, (3) the petitioner possesses no other adequate or appropriate remedy. *Id.* Mandamus can only be used to compel performance of a ministerial duty and will not be granted in doubtful cases. *Id.*
>
> Notwithstanding, mandamus is an appropriate remedy to correct an error in DOC's computation of maximum and minimum dates of confinement where the sentencing order clearly gives the inmate credit for the time period in question and DOC's computation does not comply with that credit. *Black v. Dep't of Corr.*, 889 A.2d 672 (Pa. Cmwlth. 2005). However, mandamus is not available to challenge DOC's failure to give credit where the sentencing order is either ambiguous or does not specify the credit at issue. *See McCray*; *Black*; *Aviles*. In addition, mandamus is not an appropriate remedy to cure an illegal sentencing order. *Aviles*.

*Allen*, 103 A.3d at 369-70.

Respondents all premise their first argument upon the assertion that the July 20, 2018 sentencing order's language is too open-ended to establish that Lee has a clear right to relief, and reference a litany of cases that they claim support their

9

position on this point. *See* DOC Respondents' Br. at 9-10; Thomas' Br. at 12-15. However, they misapprehend the nature of those cases, in which there was complete silence in the relevant sentencing order as to credit for time served; ambiguity regarding how such credit should be applied, due to the interplay between the affected inmate's various criminal convictions and/or probation violations; and/or evidence that clearly showed that the sought-after credit has already been granted. *See Perez v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 77 M.D. 2020, filed Dec. 22, 2020), slip op. at 1-5, 2020 WL 7587148, at *1-*3; *Terrell v. Facility Manager at SCI-Mahanoy State Prison*, (Pa. Cmwlth., No. 95 M.D. 2020, filed Nov. 19, 2020), slip op. at 2-7, 2020 WL 6799150, at *1-*3; *Harvey v. Dep't of Corr.* (Pa. Cmwlth., No. 541 M.D. 2019, filed May 12, 2020), slip op. at 2-7, 2020 WL 2394917, at *1-*3; *Canfield v. Pa. Dep't of Corr.* (Pa. Cmwlth., No. 585 M.D. 2016, filed Aug. 11, 2017), slip op. at 2-4, 2017 WL 3443256, at *1-*2; *Mullen v. Dep't of Corr.*, (Pa. Cmwlth., No. 328 M.D. 2013, filed Jan. 30, 2014), slip op. at 2-6, 2014 WL 346711, at *1-*3; *Wilkinson v. Dep't of Corr.* (Pa. Cmwlth., No. 567 M.D. 2010, filed Sept. 21, 2012), slip op. at 2-5, 2012 WL 8678133, at *1-*2; *McCray*, 872 A.2d at 1129.

Lee's situation is entirely distinguishable from those present in these other matters. As already discussed, the July 20, 2018 sentencing order provides, in relevant part, that Lee was to receive "[c]redit for time served[,]" and directs that the precise amount of such "[c]redit . . . be calculated by the Phila[delphia] Prison System[.]" PFR, Ex. 6. In addition, Lee had already finished serving the Board-imposed TPV backtime on his Original Sentence prior to the date of sentencing on the New Charges and, other than his New Sentence, Lee had no other carceral sentences towards which the remaining pre-sentencing credit could have been applied. Thus, in context and unlike in the cases relied upon by Respondents, the

July 20, 2018 sentencing order unambiguously imbued Lee with a clear right to have all such remaining credit applied towards his New Sentence.[7]

This remaining credit potentially encompasses a large portion of the time period identified by Lee in his PFR. Lee served six months of TPV backtime on his Original Sentence between June 3, 2016, and December 3, 2016, and therefore cannot receive duplicate credit towards his New Sentence for that time period. *Jackson v. Vaughn*, 777 A.2d 436, 438 (Pa. 2001). In addition, he has already received credit towards his New Sentence for June 2, 2016, as well as for the time period between April 19, 2018, and July 20, 2018. *Lee I*, 251 A.3d at 846. However, there is nothing at this point that shows he ever received the remainder of the presentence detention time credit which he seeks, and to which he was entitled, for the time he served from December 3, 2016, through April 18, 2018. *See* 42 Pa. C.S. § 9760(1). Though Respondents argue that the Board applied credit for that period to Lee's Original Sentence, this assertion appears to be based upon a misreading of the Board's July 13, 2016, and April 5, 2018 decisions, as well as its April 18, 2018

---

[7] Lee's situation is similar to that which was present in *Allen*. In that matter, an inmate had repeatedly violated his probation and had consequently been resentenced several times to both additional stints in prison and extended periods of probation. 103 A.3d at 367-68. As a result of Allen's third violation, the sentencing court revoked his probation and resentenced him to between 59 months and 119 months in state prison, with "credit for any time previously served on this matter as determined by prisons." *Id.* In adjudicating Allen's mandamus action against DOC, we held that the quoted language clearly evinced the sentencing court's intent to award Allen credit for all time he had served as a result of his previous probation violations, and to have that credit applied towards the newly imposed violation of probation sentence. *Id.* at 370-71. We accordingly concluded that DOC had contravened the terms of the sentencing court's order when it failed to apply that credit in such a fashion. *Id.* at 372. In other words, the sentencing order's language may have appeared to be ambiguous, facially speaking, but was not when that language was placed in its proper context. The same is true here.

parole order.[8] Indeed, contrary to Respondents' position, there is *nothing* that shows the Board *ever* awarded Lee credit covering that window.[9] *See* PFR, Ex. 10, Apps. A-B; *Lee I*, 251 A.3d at 844. Thus, we cannot conclude at this stage of litigation that he does not have a clear right to the relief he seeks regarding roughly 16½ months of credit for time he served in presentence detention.

As for Respondents' remaining argument that they have no corresponding duty to provide Lee with the time credit he seeks, this is partially correct and partially incorrect. To reiterate, though Lee has already received credit for some of the time he was held in presentence detention, it does not appear that this was the case for the period between December 3, 2016, and April 18, 2018, despite the fact that he has a clear right to receive credit for that span. Thomas correctly points out, though, that the responsibility to properly calculate Lee's New Sentence falls upon DOC at this stage. *See Comrie v. Pa. Dep't of Corr.*, 142 A.3d 995, 1001 (Pa. Cmwlth. 2016); *Forbes v. Pa. Dep't of Corr.*, 931 A.2d 88, 92-94 (Pa. Cmwlth. 2007). Though Lee claims that Thomas is a proper party to this action, he also avers in his PFR that Thomas is an employee of the Philadelphia Prison System, an assertion that is supported by the attached documentation. *See* PFR at 2, 8, 10, 16, 42, Ex. 6. Therefore, as Thomas is not DOC itself or a DOC employee responsible for sentence calculations, he owes no current duty to Lee in relation to the sought-after relief.

---

[8] As mentioned in note 5 *supra*, it is not clear at this stage why the Board paroled Lee in 2018, given that he had not been serving Board-imposed backtime at that point.

[9] Thomas' November 16, 2018 letter to Lee's then-counsel also appears to be predicated in part upon the same misreading. *See* PFR, Ex. 6.

### III. Conclusion

In accordance with the foregoing analysis, we sustain Respondents' respective preliminary objections in part, regarding Lee's clear right to receive credit towards his New Sentence for time served in presentence detention on June 2, 2016, as well as from April 19, 2018, to July 20, 2018; Respondents' corresponding duty to provide Lee with the relief he seeks for those time periods; and Thomas' broader lack of duty to provide Lee with the sought-after relief. Furthermore, we overrule the remainder of Respondents' preliminary objections, dismiss Lee's claims against Thomas and, in addition, dismiss Thomas from this action. Finally, we direct DOC Respondents to answer Lee's PFR within 30 days.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Curtis Lee, A.K.A Steven Ackridge, :
               Petitioner :
                :
      v. : No. 101 M.D. 2022
                :
Christopher M. Thomas, Director of :
Classification Movement and :
Registration (Philadelphia Prison :
System), and Jaime Sorber, :
Superintendent at S.C.I. Phoenix, :
and Kim Nixon, Records Room :
Supervisor-Department of :
Corrections at S.C.I. Phoenix, :
               Respondents :

# O R D E R

AND NOW, this 17th day of March, 2023, it is HEREBY ORDERED:

1. Respondents Christopher M. Thomas, Director of Classification Movement and Registration (Philadelphia Prison System) (Thomas), Jaime Sorber, Superintendent at S.C.I. Phoenix (Sorber), and Kim Nixon, Records Room Supervisor-Department of Corrections at S.C.I. Phoenix's (Nixon) (collectively Respondents) respective preliminary objections are SUSTAINED IN PART, regarding:

   a. Petitioner Curtis Lee, A.K.A Steven Ackridge's (Lee) clear right to receive credit towards his New Sentence for time served in presentence detention on June 2, 2016, as well as from April 19, 2018, to July 20, 2018;

b. Respondents' corresponding duty to provide Lee with the relief he seeks for those time periods; and

c. Thomas' broader lack of duty to provide Lee with the sought-after relief;

2. Respondents' preliminary objections are otherwise OVERRULED;

3. Lee's claims against Thomas are DISMISSED;

4. Thomas is DISMISSED as a respondent to this action; and

5. Nixon and Sorber shall answer Lee's petition for review within thirty (30) days.

_____
ELLEN CEISLER, Judge